UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Melvin Kornberg, | Case No.: 12-cv-1961-JAD-PAL |
| Plaintiff, | |
| vs. | **Order Denying Defendant's Motion for Summary Judgment** |
| United States of America, et al., | **[Doc. 39]** |
| Defendants. | |

Melvin Kornberg alleges that his chorda tympani nerve was cut during a stapedectomy surgery at the VA hospital in San Diego, damaging his sense of taste. Kornberg claims the nerve damage was a side effect he was never informed of before the surgery, and he asserts a single negligence claim against the United States under the Federal Tort Claims Act (FTCA).[1]

The government moves for summary judgment, arguing that Kornberg cannot prove medical malpractice because he has no expert to testify that the standard of care was breached and, regardless, the doctor performing the surgery did not breach the standard of care because this side effect is a known risk of stapedectomy surgery.[2] Kornberg responds that his claim is one for failure to obtain informed consent, not medical malpractice, which has different elements of proof. I accept Kornberg's characterization of his claim, consider his argument as an abandonment of any intended medical-malpractice theory, and deny summary judgment because the government has not demonstrated that it is entitled to judgment as a matter of law on Kornberg's claim that his medical-care providers failed to obtain his informed consent before performing his stapedectomy surgery.

---

[1] *See* Doc. 1 (complaint); Doc. 18 (stipulated dismissal of all but negligence claim).

[2] Doc. 39.

## Discussion

**A.  Kornberg has abandoned any medical malpractice theory that he may have pled.**

Not a model of clarity, Kornberg's complaint is factually centered on his theory that he was never informed of any risks of the stapedectomy surgery and, although he signed consent forms, he did so from the gurney as he was wheeled into surgery, without any opportunity to review them.[3] In his sole remaining claim for "negligence," Kornberg alleges that the government breached its duty of care by:

> (1) Failing to allow the Plaintiff any reasonable or adequate opportunity to review the consent document prior to executing the document shortly before his surgery; (2) Failing to advise the Plaintiff of any and all know [sic] and/or foreseeable risks of the procedure; [and] (3) Negligently engaging in conduct during the surgical procedure which caused damage to the Plaintiff's chorda tympani nerve and permanent damage to his sense of taste.[4]

The third alleged breach may be reasonably interpreted as a medical malpractice claim. But when describing this negligence claim in his opposition to the motion for summary judgment, Kornberg omits this third alleged breach and describes his "sole remaining claim in this action" as "a negligence[-]based tort" based on the first two theories only.[5] "This," he emphasizes, "is not a medical malpractice action."[6] Kornberg acknowledges that California law requires an expert witness affidavit to survive summary judgment on a medical malpractice claim, but he contends those standards do not apply to his more simple failure-to-obtain-informed-consent claim.[7]

The court will take plaintiff at his word that he did not intend by his inarticulately pled complaint to state a medical-malpractice claim. And to the extent that the complaint can be read to contain such a theory, the court will consider it abandoned with prejudice.

---

[3] Doc. 1 at ¶¶ 6–8.

[4] *Id.* at ¶ 28.

[5] Doc. 42 at 7; *see also id.* at 8 (adding, "The Defendants' argument that Kornberg's action is a medical malpractice action under California law is completely mistaken").

[6] *Id.*

[7] *Id.*

**B.     The government has not established entitlement to summary judgment on Kornberg's failure-to-obtain-informed-consent claim.**

On the premise that Kornberg's claim is a medical-malpractice claim in a negligence disguise, not a failure-to-obtain-informed-consent claim with a stray medical-malpractice allegation, the government offers these arguments for summary judgment: (1) Kornberg lacks the expert testimony he needs to prove medical malpractice under California law, (2) even if Kornberg's claim sounds only in negligence, he needs expert testimony to prove his informed-consent claim,[8] and (3) Kornberg's testimony that he was never told of the risks of surgery cannot create a genuine issue of fact as a matter of law.[9]

*1.     California law does not require expert testimony for Kornberg's informed-consent claim.*

FTCA actions like this one are governed by the substantive law in the state where the alleged tort occurred—in this case, California.[10] In California, "[a] claim based on lack of informed consent—which sounds in negligence—arises when the doctor performs a procedure without first adequately disclosing the risks and alternatives."[11] "The fount of the doctrine of informed consent in California" is *Cobbs v. Grant*, which "anchored much of the doctrine of informed consent in a theory of negligence liability" and confirmed "the obligation of a treating physician 'of reasonable disclosure of the available choices with respect to proposed therapy and the dangers inherently and potentially involved in each.'"[12] *Cobbs* fashioned a two-part test for informed-consent violations:

> First, a physician must disclose to the patient the potential of death, serious harm and other complications associated with a proposed procedure. Expert testimony on the custom of the medical community

---

[8] Doc. 39.

[9] Doc. 45 at 4.

[10] 28 U.S.C. § 1346(b)(1); *Delta Savings Bank v. United States*, 265 F.3d 1017, 1025 (9th Cir. 2001).

[11] *Saxena v. Goffney*, 159 Cal. App. 4th 316, 324 (Cal. Ct. App. 2008).

[12] *Arato v. Avedon*, 858 P.2d 598, 604–05 (Cal. 1993) (quoting *Cobbs v. Grant*, 502 P.2d 1, 10 (Cal. 1972)).

> is not necessary to establish this duty.  Second, beyond the [] minimal disclosure, a doctor must also reveal to his patient such additional information as a skilled practitioner of good standing would provide under similar circumstances.  Therefore, **expert testimony is relevant and admissible to determine the duty to disclose matters other than the risk of death or serious harm and significant potential complications.**[13]

The California Supreme Court "underline[d] the limited and essentially subsidiary role of expert testimony in informed consent litigation" in *Arato v. Avedon*, noting the anticipated need for expert testimony in only a "limited number" of these cases:

> [A] rule that filters the scope of patient disclosure entirely through the standards of the medical community "arrogates the decision of what to disclose to the physician alone." We explicitly rejected such an absolute rule as inimical to the rationale and objectives of the informed consent doctrine; we affirm that position. Nevertheless, . . . there may be a limited number of occasions in the trial of informed consent claims where the adequacy of disclosure in any given case may turn on the standard of practice within the relevant medical community.  In such instances, expert testimony will usually be appropriate.[14]

The government has not demonstrated that this is one of those "limited" informed-consent cases in which expert testimony is necessary.  Kornberg claims he suffered damage to his chorda tympani nerve during his middle-ear surgery.  This alleged injury is precisely the type of "significant potential complications" for which the California courts do not require expert testimony.  As the declaration of Dr. Andrew K. Patel in support of defendants' motion for summary judgment attests, "the damage claimed is a standard risk of middle ear surgery,. . . ." "a "relevant aspect[] of the proposed stapedectomy surgery," and "a known, accepted, and not uncommon complication of stapes surgery."[15]  Indeed, as he further attests, "injury to the chorda tympani, involving a change in taste, is a known risk for this surgery" expressly identified on the consent form.[16]  Thus, the

---

[13] *Betterton v. Leichtling*, 101 Cal. App. 4th 749, 754–55 (Cal. Ct. App. 2002) (quoting *Daum v. SpineCare Med. Grp., Inc.*, 52 Cal. App. 4th. 1285, 1301–02 (Cal. Ct. App. 1997) (internal quotation marks omitted) (emphasis added).

[14] *Arato*, 858 P.2d at 611.

[15] Doc. 39-3 at 3.

[16] *Id.*

government has not demonstrated that this is the type of informed-consent case in which expert testimony will be required.

### 2. *Kornberg's testimony creates genuine issues of fact that prevent summary judgment.*

Finally, the government argues that summary judgment is required because Kornberg's deposition testimony[17] that he was never informed of the risks of surgery does not create a genuine issue of fact. As the legal basis for this argument, the government cites *Villiarimo v. Aloha Island Air, Inc.*[18] and states that "[u]ncorroborated and self-serving testimony, without more, will not create a genuine issue of material fact."[19]

The government overstates this rule. As the authority that the *Villiarimo* court relied explains, judges have the discretion to exclude testimony "that is so undermined as to be incredible,"[20] like when "a plaintiff's claim is supported solely by the plaintiff's own self-serving testimony, unsupported by corroborating evidence, **and** undermined either by other credible evidence, physical impossibility[,] or other persuasive evidence that the plaintiff has deliberately committed perjury."[21] Kornberg's testimony may be self-serving and it conflicts with

---

[17] Kornberg's deposition excerpts are not authenticated, and the court has the discretion to exclude this evidence on this basis alone. Fed. R. Civ. Proc. 56(c)(1); Fed. R. Evid. 901; *Orr v. Bank of Am.*, 285 F.3d 764, 773 (9th Cir. 2002) (noting that the court may only consider admissible evidence on summary judgment and explaining the proper method for authenticating deposition testimony on summary judgment). Because the government does not challenge the authenticity or accuracy of the deposition transcript plaintiff attaches at Doc. 42-1, and the only thing lacking from the exhibit is the court reporter's certificate, I find it has sufficient indicia of reliability for me to consider it here.

**Plaintiff and his counsel are cautioned, however, that exhibits submitted on summary judgment must be properly authenticated, and counsel should familiarize himself with the *Orr* requirements if he plans to continue practicing in federal court. This court will not likely afford such lenity in the future.**

[18] *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002).

[19] Doc. 45 at 4.

[20] *Johnson v. Washington Metro. Area Transit Auth.*, 883 F.2d 125, 128 (D.C. Cir. 1989), overruling on other grounds recognized *Belton v. Washington Metro. Area Transit Auth.*, 20 F.3d 1197, 1200 (D.C. Cir. 1994)).

[21] *Id.* (emphasis added).

Dr. Patel's testimony, but I do not find that it is so undermined to be incredible. What it does at this point is give me a different account of events. My "function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter but only to determine whether there is a genuine issue for trial."[22] I find genuine issues of fact prevent me from granting summary judgment on Kornberg's sole remaining informed-consent claim.

## Conclusion

Accordingly, IT IS HEREBY ORDERED that the defendants' motion for summary judgment **[Doc. 39] is DENIED**.

DATED: May 27, 2015.

_____
Jennifer A. Dorsey
United States District Judge

---

[22] *Johnson*, 883 F.2d at 128 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)).